UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ALEX HAROLD RACKLEY, III,

                    Petitioner,

vs.                                                            Case No. 3:17-cv-341-BJD-JBT

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

                    Respondents.

_____

**<u>ORDER</u>**

## I.  INTRODUCTION

Petitioner Alex Harold Rackley, III, filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody (Petition) (Doc. 1) challenging his state court (Duval County) conviction for first degree murder and possession of a firearm by a convicted felon.   Respondents filed an Answer in Response to Order to Show Cause (Response) (Doc. 14).   Petitioner filed a Reply to State's Response (Reply) (Doc. 15).   In the Petition, Petitioner raises three grounds.   Respondents contend all three grounds are procedurally defaulted.   Response at 11-13, 19-20, 23-25.[1]

_____

[1] Respondents filed an Appendix to Answer (Doc. 14).   The Court will hereinafter refer to the Exhibits contained in the Appendix as "Ex."   The page numbers referenced are the Bates stamp numbers at the bottom of each page of the exhibit.   Otherwise, the page number on

## II.   EVIDENTIARY HEARING

"In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017).   To be entitled to an evidentiary hearing, a petitioner must allege "facts that, if true, would entitle him to relief."   Martin v. United States, 949 F.3d 662, 670 (11th Cir.) (quoting Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)) (citation omitted), cert. denied, 141 S. Ct. 357 (2020). See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same).

If the allegations are contradicted by the record, patently frivolous, or based upon unsupported generalizations, the court is not required to conduct an evidentiary hearing.   Martin, 949 F.3d at 670 (quotation and citation omitted).   Here, the pertinent facts are fully developed in this record or the

---

the document will be referenced.   For the Petition, Response, and Reply, the Court references the page numbers assigned by the electronic filing system.

record otherwise precludes habeas relief; therefore, this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).   Upon review, Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief; therefore, the Court finds Petitioner is not entitled to an evidentiary hearing.   Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

## III.   HABEAS REVIEW

The Eleventh Circuit opined that federal courts are authorized to grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   Lee v. GDCP Warden, 987 F.3d 1007, 1017 (11th Cir. 2021) (quoting 28 U.S.C. § 2254).   Further, under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), there is a very deferential framework, limiting the power of federal courts to grant relief if a state court denied a claim on its merits. Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted) (acknowledging the deferential framework of AEDPA for evaluating issues previously decided in state court), cert. denied, 141 S. Ct. 2469 (2021); Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing

AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

Indeed, relief is limited to occasions where the state court's decision:

> "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A state court's decision is "contrary to" clearly established federal law if the state court either reaches a conclusion opposite to the Supreme Court of the United States on a question of law or reaches a different outcome than the Supreme Court in a case with "materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle" from Supreme Court precedents "but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413, 120 S. Ct. 1495.

Lee, 987 F.3d at 1017-18.

This high hurdle is not easily surmounted; if the state court applied clearly established federal law to reasonably determined facts when determining a claim on its merits, "a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" Shinn v. Kayer, 141 S. Ct. 517, 520 (2020) (per curiam)

(quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011)).   Also, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).   "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary."   <u>Sealey</u>, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)).   This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact.   <u>Brannan v. GDCP Warden</u>, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), <u>cert. denied</u>, 573 U.S. 906 (2014).   Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference."   <u>Dallas v. Warden</u>, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting <u>Brumfield v. Cain</u>, 576 U.S. 305, 314 (2015)), <u>petition for cert. filed</u>, (U.S. Feb. 27, 2021) (No. 20-7589).   As such, a federal district court may not supersede a state court's determination simply because reasonable minds may disagree about the finding.   <u>Id</u>. (quotation and citation omitted).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are "governed by the familiar two-part <u>Strickland</u>[v. Washington, 466 U.S. 668 (1984)] standard."   <u>Knight v. Fla. Dep't of Corr.</u>, 958 F.3d 1035, 1038 (11th Cir. 2020), <u>cert. denied</u>, 141 S. Ct. 2471 (2021).

To prevail on a claim of ineffective assistance of counsel, a petitioner must successfully show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" as well as show "the deficient performance prejudiced the defendant, depriving him of a 'fair trial, a trial whose result is reliable.'"  Raheem v. GDCP Warden, 995 F.3d 895, 908 (11th Cir. 2021) (quoting Strickland, 466 U.S. at 687).  As both components under Strickland must be met, failure to meet either prong is fatal to the claim. Raheem, 995 F.3d at 908 (citation omitted).

With respect to an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, a petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985). The ineffective assistance of counsel may require a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension.  Finch v. Vaughn, 67 F.3d 909, 914 (1995) (citations omitted).

This Court must be mindful that in a post-conviction challenge to a guilty plea, the representations of the defendant, his counsel, and the prosecutor at the plea hearing, plus the findings of the judge, constitute "a formidable barrier."  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  Indeed, a

defendant's solemn declarations in open court carry a strong presumption of verity.   Thus, later contentions by a defendant contrary to the record may be deemed wholly incredible in light of the record.

Finally, the Eleventh Circuit warns:

> because "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' . . . when the two apply in tandem, review is 'doubly' so.   Harrington [v. Richter, 562 U.S. 86, 105 (2011)] (internal citations and quotation omitted).   Thus, under § 2254(d), "the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."   Id.

Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 795 (11th Cir. 2020), cert. denied, 141 S. Ct. 1721 (2021).

## V.   EXHAUSTION AND PROCEDURAL DEFAULT

Respondents contend grounds one, two, and three are procedurally defaulted.   The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to

> abide by a state procedural rule. See, e.g., Coleman,[2] supra, at 747-748, 111 S. Ct. 2546; Sykes,[3] supra, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. ----, ----, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S.----, ----, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012).

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state court remedies.   Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509 (1982).   A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'"   Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)), cert. denied, 558 U.S. 1151 (2010).

---

2  Coleman v. Thompson, 501 U.S. 722 (1991).

3  Wainwright v. Sykes, 433 U.S. 72 (1977).

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez, 566 U.S. at 10 (citing Coleman, 501 U.S. at 750). To demonstrate cause, a petitioner must show some objective factor external to the defense impeded his effort to properly raise the claim in state court. Wright v. Hopper, 169 F.3d 695, 703 (11th Cir.), cert. denied, 528 U.S. 934 (1999). If cause is established, a petitioner must demonstrate prejudice. To demonstrate prejudice, a petitioner must show "there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred." Owen, 568 F.3d at 908.

Alternatively, a petitioner may obtain review of a procedurally barred claim if he satisfies the actual innocence "gateway" established in Schlup v. Delo, 513 U.S. 298 (1995). The gateway exception is meant to prevent a constitutional error at trial from causing a miscarriage of justice and conviction of the actually innocent. Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert. denied, 569 U.S. 1004 (2013).

In ground one, Petitioner raises the following claim: "[i]neffective assistance of counsel, involuntary plea." Petition at 5. In ground two, he

9

claims he received the ineffective assistance of counsel due to counsel's actual conflict of interest due to financial issues.  Id. at 7.  In his third and final ground, he raises a claim of ineffective assistance of counsel for failure to investigate, interview, and call an alibi witness.  Id. at 8.

In his initial Rule 3.850 motion, Petitioner raised comparable grounds. Ex. M at 3-18.  The circuit court entered an Order Dismissing Defendant's Motion for Post Conviction Relief as untimely filed.  Ex. M at 28-111. Petitioner appealed.  Id. at 123; Ex. N; Ex. O.  The First District Court of Appeal (1st DCA), in its December 1, 2016 Opinion, stated the following:

> Although we find Appellant's motion under Rule 3.850 of the Florida Rules of Criminal Procedure was timely filed, **we reject Appellant's claims on the merits and affirm**.  See Robertson v. State, 829 So. 2d 901, 906 (Fla. 2002) (noting that appellate court may affirm a trial court order that reaches the right result but for the wrong reason).
>
> AFFIRMED.

Ex. P (emphasis added).

Petitioner moved for rehearing and the 1st DCA denied rehearing.   Ex. Q.  The mandate issued on January 31, 2017.   Ex. R.

Upon review, Petitioner adequately exhausted these three claims by raising them in his Rule 3.850 motion and appealing the dismissal of the motion.   Finding the claims without merit, the 1st DCA affirmed Petitioner's

Judgment and Sentence.   Ex. P.   As the state court provided a merit-based ruling, this Court concludes the claims are not unexhausted nor are they procedurally defaulted.   As a result, the Court will hereinafter address these grounds.

## VI.   GROUND ONE

Petitioner exhausted this claim by raising it in his Rule 3.850 motion and on appeal to the 1st DCA.   The 1st DCA affirmed finding no merit to the claim.   Ex. P.   In doing so, the 1st DCA had before it the Order Dismissing Defendant's Motion for Post Conviction Relief (Order).   Ex. M at 28-31. Attached to the Order are the following documents:   the Plea of Guilty and Negotiated Sentence, the Judgment and Sentence, Defendant's Motion to Withdraw Guilty Plea, Order Denying the Defendant's Motion to Withdraw Plea, the August 19, 2011 Plea Transcript, and the plea form.   Id. at 32-111.

The 1st DCA's decision is entitled to AEDPA deference.   Petitioner has failed to show the state court's decision for ground one was either an unreasonable determination of the facts or in contravention of federal law. The clearly established Federal law is limited to that which has been determined by the Supreme Court of the United States, 28 U.S.C. § 2254(d)(1). Petitioner has not shown that the rejection of this claim was either contrary to, or involved an unreasonable determination of, clearly established Federal

law, or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   As such, ground one is due to be denied.

In the alternative, Petitioner is not entitled to habeas relief.   A discussion follows.

In this ground, Petitioner raises a claim of ineffective assistance of counsel, involuntary plea.   Petition at 5.   In support, he contends counsel used coercion and threats of the death sentence to force Petitioner into taking or accepting a plea agreement.   Id.   Petitioner raised a similar claim in his motion to withdraw his plea.   Ex. D at 727-32.   The circuit court denied the motion finding the record conclusively refutes Petitioner's allegation.   Ex. E at 6-8.   The court stated it could rely on Petitioner's sworn testimony given in the plea colloquy as well as the written plea agreement.   Id. at 6.   Further, the court found any allegations contradictory to the written agreement and the colloquy "should not be entertained."   Id.

In denying the motion, the court explained:

> After reviewing the record, the Court finds that it refutes the general and conclusory allegations of the Motion.  The Defendant actively participated in the plea colloquy and expressed his concerns to the Court. Consequently, it appears that while the Defendant was dissatisfied with the outcome of his case, there exists no basis for a post-sentencing withdrawal.   The

> colloquy transcript and the written Plea of Guilty
> indicate that the Defendant's plea was freely and
> voluntarily entered, and that the Defendant was fully
> aware of the ramifications of his plea.   Despite the
> Court's offer, the Defendant did not want any
> additional time to discuss his case with counsel.   He
> also did not articulate any specific further actions he
> wished counsel to perform.   Therefore, the
> Defendant's Motion is denied.   See Stano v. State, 520
> So. 2d 278, 279-80 (Fla. 1988).

Ex. E at 7 (citations and footnote omitted).

After appointment of counsel for Petitioner, the court denied a motion for rehearing and evidentiary hearing.   Id. at 76-91; Ex. F at 7-15 (November 20, 2012 Transcript).   Through counsel, Petitioner appealed the denial of his motion to withdraw plea and denial of evidentiary hearing.[4]   Ex. G.   The state filed an answer brief.   Ex. H.   The 1st DCA affirmed per curiam, citing Taylor v. State, 120 So. 3d 540 (Fla. 2013) (per curiam) and Johnson v. State, 22 So. 3d 802 (Fla. 1st DCA 2010) [sic].   Ex. I.   The mandate issued on March 18, 2014.   Id.

---

4 Petitioner raised three grounds on appeal:   (1) the trial court erred in finding insufficient Appellant's motion to withdraw plea, when Appellant was not afforded the opportunity to amend his motion to withdraw plea; (2) the trial court erred in denying Appellant a rehearing or an evidentiary hearing on his motion to withdraw plea; and (3) the trial court erred in failing to appoint Appellant counsel in his motion to withdraw plea, when Appellant was indigent, and his motion to withdraw fell within a critical stage in direct criminal proceedings against Appellant.   Ex. G at ii.

The Court provides the pertinent procedural history to provide context for this ground.   The record shows the state filed a Notice of Intent to Seek Death Penalty and Request for Statement of Particulars of Mental Mitigation. Ex. A at 50.   On June 29, 2010, the circuit court appointed attorneys W. Charles Fletcher (1st chair) and Richard Selinger (2nd chair).   Id. at 57.   The record includes the Agreement for Attorney Services for the Fourth Judicial Circuit by Selinger and Fletcher, P.A.   Id. at 89-91.   On July 20, 2011, Mr. Selinger moved to withdraw as counsel after being provided notice of budgetary constraints that informed counsel that funds were not available to pay legal fees over the maximum statutory cap.   Ex. D at 676-81.   The record does not show that this motion was ever addressed by the court or its pendency brought to the court's attention.[5]

On August 19, 2011, Petitioner signed a Plea of Guilty and Negotiated Sentence.   Id. at 710-14.   He states he is entering his plea of guilty because he is guilty and because he feels it is in his best interest.   Id. at 710.   He agreed to a mandatory life sentence for the first degree murder of Karen Wood and to a concurrent fifteen years in prison for the offense of possession of a firearm by a convicted felon.   Id.   The plea form includes the statement:

---

5  In fact, at the plea proceeding, the court asked whether there were any pending motions, and Mr. Selinger responded in the negative.   Ex. E at 27.

14

> I consider this negotiated sentence to be to my advantage, and I have freely and voluntarily entered my plea of guilty.   I have not been offered any hope of reward, better treatment or certain type of sentence to get me to plead guilty – other than [sic] sentence set forth above – nor have I been threatened, coerced, or intimidated in any way to get me to plead guilty.   My attorneys have been very fair with me.   They have not coerced me or intimidated me in any way to do this.

Id.

The form also advised Petitioner of his rights.  Id. at 711.   It included the statement, "I understand that the prosecution has filed a notice of intent to seek death in this case and that had I sought to contest this charge at trial I would have been entitled to a penalty phase proceeding in the event of the finding of guilt as to murder in the first degree."  Id.   It further stated that Petitioner understood he would spend the remainder of his natural life in prison and forfeit all rights to appeal if sentenced within the terms of the agreement.  Id.   Finally, it states: "I enter into this negotiation in exchange for the State[']s agreement to forbear seeking the death penalty against me." Id.

The form also contains the following sections:   "read and explained by my attorney," "understanding of the plea," "length of incarceration," "time for consideration and reflection," "not under influence of any substance o[r] condition," and "DNA evidence and Jimmy Ryce consequences."  Id. at 712-

13.  It concludes with the statement, "I understood this plea of guilty form when my attorneys read and explained it to me, and it is true and correct[.]" Id. at 713.  The form is signed by Petitioner, Mr. Selinger, a witness, the assistant state attorney, and the judge.  Id. at 713-14.

Of course, most tellingly, Petitioner provided sworn testimony at the plea colloquy.  Ex. E at 9-62.  At the outset of the proceeding, Mr. Selinger announced to the court that the parties had reached a negotiated disposition and that Petitioner had authorized counsel to enter a plea of guilty to first degree murder and the possession charge.  Id. at 11.  Mr. Selinger explained the plea is for a negotiated sentence of life in prison without the possibility of parole in the murder case and fifteen years in prison for the possession of a firearm charge.  Id. at 12.

Petitioner assured the court that he had had enough time to talk to his counsel about the plea.  Id. at 13.  The plea form stated that fact as well.  Ex. D at 713.  During the colloquy, Petitioner stated he understood he could have gotten the death penalty imposed if he had been convicted by a jury.  Ex. E at 13.  Petitioner confirmed that he understood that he will be in prison for the remainder of his natural life.  Id. at 13-14.  When asked if anyone had threatened him, coerced him, leaned on him, pushed him, including Mr.

16

Selinger, in order to get Petitioner to enter his plea, Petitioner responded:   "I feel like I'm doing it in my best interest."   Id. at 15.

Petitioner did state that he did a lot on his own and his counsel had not really gone over the possible defenses, but he had given counsel the witnesses that he thought had information about the case.   Id. at 15-16.   When asked if counsel had gone over the state's witnesses and police reports, Petitioner said no, but then Mr. Selinger explained to the court that Mr. Fletcher had the guilt phase and Mr. Selinger had the penalty phase.   Id. at 17.   Contrary to his earlier statement, Petitioner said he had not had enough time to talk to his lawyers.   Id.   The court then asked if it would help Petitioner if the court gave him some more time.   Id.   Petitioner responded, "I don't need any more time." Id.   Petitioner said he was comfortable and ready to get it over with.   Id.

Thereafter, the court went over the plea form with Petitioner.   Id. Petitioner stated he went over the form with counsel before signing the form. Id.   Petitioner confirmed that he was freely and voluntarily entering into his plea of guilty.   Id. at 20.   He agreed that he had not been threatened, coerced, or intimidated in any way to get him to plead guilty.   Id. at 21.   He also agreed that his attorneys had been fair and had not coerced or intimidated him in any way to get him to plead.   Id.   He acknowledged that he entered into

17

the negotiation in exchange for the state's agreement to forbear seeking the death penalty.   Id. at 24-25.

Petitioner expressed general dissatisfaction, and the court said if Petitioner preferred to withdraw the plea, he could to so and go on to trial.   Id. at 26-27.   Petitioner told the court he understood.   Id. at 27.   When the court asked if all depositions had been taken that needed to be taken, counsel said yes, and Petitioner acknowledged that he understood.   Id. at 27-28.   After an extensive plea colloquy, Petitioner assured the court he did not need more time and he wanted to proceed with his plea.   Id. at 30.   Petitioner confirmed that he understood the plea of guilty form and stated it is true and correct.   Id. at 32.

The state provided a factual basis for the plea.   Id. at 32-33.   The defense stipulated to the factual basis and the court noted that Petitioner said the plea was made in his best interest.   Id. at 34.   The court found the plea freely and voluntarily entered with the full knowledge and understanding of the consequences.   Id. at 56.   The court accepted the plea and adjudicated Petitioner guilty.   Id.   The court sentenced Petitioner to life and a concurrent fifteen-year term in prison.   Id. at 56-57.

Here, of course, Petitioner faces the formidable barrier of his sworn testimony and representations at the plea hearing and the written statements

18

in the signed plea form.   Petitioner's solemn declarations may not be taken lightly and carry a strong presumption of verity.   As such, Petitioner's statements to the contrary are deemed wholly incredible in light of the record. Indeed, Petitioner's attempt to seek to go behind his previously sworn testimony given during his plea proceeding is not well taken.

At the plea proceeding, Petitioner expressed his position that he was pleading guilty because he believed it to be in his best interest.   This position is also contained in the written plea agreement signed by Petitioner.   Of import, Petitioner avoided facing the death penalty by pleading to a negotiated sentence.   Petitioner received the benefit of the bargain.   The court's sentence was within the terms of the agreement.   Therefore, Petitioner is not entitled to habeas relief.   Thus, ground one is due to be denied.

## VII.   GROUND TWO

Petitioner exhausted this ground by raising it in his Rule 3.850 motion and on appeal to the 1st DCA.   The 1st DCA affirmed finding no merit to the claim.   Ex. P.   The 1st DCA's decision is entitled to AEDPA deference.

The Court finds the state court's determination is consistent with federal precedent.   The state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   In brief, the state court's adjudication of the claim is not contrary to or an unreasonable application of

Supreme Court law or based on an unreasonable determination of the facts. Therefore, this claim is due to be denied.

In the alternative, Petitioner is not entitled to habeas relief on his claim that he received the ineffective assistance of counsel due to counsel's actual conflict due to financial issues.   In this ground, Petitioner asserts Mr. Selinger filed a motion to withdraw one month prior to trial.   The record shows Mr. Selinger moved to withdraw "as defendant's penalty phase attorney," stating his concerns that he would not be fully compensated beyond the statutory cap. Ex. D at 676.   This motion was not addressed by the court and neither Mr. Selinger nor Petitioner raised the issue prior to or during the plea proceeding.

Of significance, Mr. Fletcher, defendant's guilt-phase counsel and designated 1st chair counsel, did not join the motion to withdraw.   Id. at 676-79.   Therefore, even if Mr. Selinger had pursued his motion to withdraw as second-chair counsel, Petitioner would still have been represented by lead counsel, Mr. Fletcher, who represented Petitioner as 1st chair counsel since June 29, 2010.   Ex. A at 57.   Mr. Fletcher did not move for discharge until August 23, 2011, after Petitioner pled guilty and received the life sentence. Ex. D at 722-23; Ex. M at 37-42.   Thereafter, on August 24, 2011, the court granted Mr. Fletcher's motion for discharge.   Ex. D at 724.

In sum, the record demonstrates Mr. Selinger did not pursue his motion to withdraw as counsel and Mr. Fletcher never joined the motion, meaning Petitioner would have been represented by long-term counsel if he had elected to withdraw his plea of guilty and proceed to trial.   Furthermore, even if Mr. Selinger had continued to seek to withdraw as counsel, Petitioner's lead counsel remained steadfast.   Indeed, Mr. Fletcher did not move to withdraw until the case had been resolved and Petitioner sentenced.

Again, Petitioner may not seek to go behind his previously sworn testimony given during his plea proceeding.   Petitioner decided to plead in his best interest, negotiating a sentence and successfully avoiding facing the death penalty.   He repeatedly told the court he did not need more time and he wanted to proceed with his plea.   He swore that he had not been coerced, threatened, or forced in some way to enter the negotiated plea by defense counsel or anyone else.   Petitioner insisted that he was ready to plead and did not need any more time to consider his decision or to discuss the matter further with counsel.   The court abided by Petitioner's request and found the plea freely and voluntarily entered.   Petitioner received the benefit of the negotiated plea and is serving a life sentence.   He is not entitled to habeas relief on ground two.

## VIII.   GROUND THREE

Petitioner exhausted ground three by raising it in his Rule 3.850 motion and on appeal to the 1st DCA.   The 1st DCA affirmed finding no merit to the claim.   Ex. P.   The 1st DCA's decision is entitled to AEDPA deference.

The Court finds the state court's determination is consistent with federal precedent.   Ground three is due to be denied as the state court's adjudication of the claim is not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts.   As such, the Court finds Petitioner is not entitled to habeas relief on ground three.

Alternatively, Petitioner is not entitled to habeas relief on his claim of ineffective assistance of counsel for failure to investigate, interview, and call an alibi witness, Bruce McCray.   In support of this ground, Petitioner states he informed counsel of an alibi witness who was willing to testify to the whereabouts of Petitioner at the time of the crime.   Petition at 8.   Petitioner attaches a General Affidavit signed by Bruce McCray, Jr., under penalty of perjury and dated November 25, 2012.   (Doc. 1-4 at 2).

In McCray's Affidavit, Mr. McCray states that he contacted Charles Fletcher, Petitioner's attorney, and told the attorney what Mr. McCray knew about the case and that he was willing to testify as an alibi witness on Petitioner's behalf, but Mr. Fletcher told Mr. McCray that it would do no good,

and that Petitioner would lose and get the death penalty if he went to trial. Id.

Upon review, Petitioner is not entitled to relief on this ground. Petitioner states his counsel, Mr. Fletcher, spoke with Mr. McCray; therefore, it is apparent that lead defense counsel was fully aware of Mr. McCray and his proposed testimony, but Mr. Fletcher said this proposed testimony would not prevent Petitioner from being convicted of first degree murder and ultimately face the death penalty.   Of significance, the record demonstrates Mr. Fletcher knew the name of the potential witness and presumably his location, and after speaking with Mr. McCray, knew the proposed testimony of the potential witness.   Therefore, there could be no failure to investigate to the extent necessary to deprive Petitioner of his Sixth Amendment right to counsel.[6]

More importantly for this case, Petitioner decided to plead guilty and forgo calling Mr. McCray although he knew of this witness and his purported testimony.   Petitioner signed the plea form, stating:

---

[6] Notably, the decision as to whether to present witness testimony is a strategic one, left within trial counsel's domain.   Chaflin v. Sec'y, Dep't of Corr., No. 6:09-cv-2055-Orl-31KRS, 2011 WL  280940, at *3 (M.D. Fla. Jan. 26, 2011) (not reported in F.Supp.2d).   Indeed, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."   Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir.) (citation omitted), cert. denied, 516 U.S. 856 (1995).

> I understand that by pleading guilty I give up the
> constitutional right to trial by the Judge or jury, the
> right to remain silent, **the right to put on witnesses
> in my own behalf**, the right to confront and cross-
> examine the witnesses against me, and on the charge
> to which I have pleaded guilty, I give up the right
> against self-incrimination.

Ex. D at 711 (emphasis added).

At the plea proceeding, the court inquired as to whether Petitioner understood his constitutional rights and what he was giving up by pleading to the offense.  Ex. E at 21-22.  The court specifically inquired as to whether Petitioner understood that by pleading guilty, he was giving up the right of trial by judge or jury and the right to put on witnesses in his behalf.  Id. Petitioner responded affirmatively.  Id. at 22.  When asked if everything had been addressed and all depositions had been taken that needed to be taken, Petitioner responded, "[y]es, sir."  Id. at 27-28.

Notably, the circuit court found the record conclusively refutes Petitioner's allegations raised in his motion to withdraw guilty plea.  Ex. E at 6.  See Johnson v. State, 22 So. 3d 840, 844 (Fla. 1st DCA 2009) (if motion to withdraw plea is conclusively refuted by the record, it is harmless error not to hold a hearing to determine whether the allegation of coercion was legitimate); Bonamy v. State, 313 So. 3d 1214, 1215 (Fla. 5th DCA 2021) (per curiam) (same).  See also Harris v. Sec'y, Dep't of Corr., No. 8:16-cv-3323-T-35AEP,

2020 WL 906183, at *12 (M.D. Fla. Feb. 25, 2020) (no need to hold a hearing or appoint conflict-free counsel if claim conclusively refuted by record).   In doing so, the circuit court relied on the written plea agreement as well as Petitioner's sworn testimony.   Ex. E at 6.   The 1st DCA affirmed.   Ex. I.

Not only did Petitioner sign the plea form, he gave sworn testimony accepting the bargained for judgment and sentence.   Apparently, in hindsight, Petitioner now regrets his decision to plead guilty in his best interest. Petitioner's current dissatisfaction with his bargained for sentence does not negate his sworn testimony at the plea proceeding.   Petitioner may not now seek to go behind his sworn testimony.   The record shows he received the benefit of the bargain and is serving a life sentence, the sentence he was advised he would receive upon entering his negotiated plea.   As such, Petitioner is not entitled to habeas relief on ground three of the Petition.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**.

3.    This action is **DISMISSED WITH PREJUDICE**.

4.    The **Clerk** shall enter judgment accordingly and close this case.

5.     If Petitioner appeals the denial of his Petition (Doc. 1), **the Court denies a certificate of appealability**.[7]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of July, 2021.

BRIAN J. DAVIS
United States District Judge

sa 7/20
c:
Alex Harold Rackley, III
Counsel of Record

---

[7] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.